Good morning, counsel. Good morning. May it please the court, my name is Jim Bopp. I represent the Park Foundation and Mr. Parks, and I'd like to reserve five minutes for a rebuttal. The determinative issue in this case is the dividing line between public policy discussion by not-for-profit groups, which the Internal Revenue Code and the Constitution permits and encourages, and restricted lobbying on a ballot measure. The Foundation is here not to seek a refused subsidy, but it simply wants to know, in advance, which is which. Now the trial court, however, applied its own erroneous tests and disregarded the mandate of the First Amendment by conflating public policy discussion and restricted lobbying. As the amicus brief of hundreds of progressive not-for-profits explained, this jeopardizes the core function of not-for-profits, chilling their participation in public discussion about public issues. While this case can be readily resolved in the Foundation's favor by simply properly applying the IRS's test, the First Amendment mandate cannot be ignored, since the trial court has set up a clear conflict between its rationale and the D.C. Circuit's opinion in Big Mama Rag. This court should not make that same error. Now this case is about the dividing line between public policy discussion and restricted lobbying. Of course, the Internal Revenue Code imposes substantial penalties on a private foundation, such as the Park Foundation, if they engage in any lobbying. But with respect... Counsel? Of course, the D.C. Circuit case is not binding precedent for us. Yes, ma'am. What case in the Ninth Circuit do you rely upon as being the closest case to support your position? I'm not aware of one. Okay, so if we disagree with the First Amendment mandate to the regulations at issue, and struck down... So generally, we have challenged the regulations and the tests as adopted by the trial court under the First Amendment. So is your position that we are compelled to follow the rationale of Big Mama Rag? No, no, because as I was about to say, even if you find that the First Amendment does not apply, you can readily rule in the favor of the Parks Foundation based upon the IRS's tests themselves. We argue that the trial court misapplied the IRS's tests. Which tests? You have two different provisions at issue, and you have to prevail on both of them. That is, if your client has violated either provision, then this is a taxable event. I'm aware. Yes, sir. Okay. Big Mama Rag really only dealt with the educational problem, right? Yes. Okay, so Big Mama Rag really doesn't have to help you very much with respect to the other issue. Well, if you agree with the D.C. Circuit that the First Amendment applies, it does help us. But it's not necessary to apply the First Amendment, because the trial court misapplied, created its own test, and misapplied the IRS's test. Its own test... I'm sorry, which provision are you discussing now? With respect to refer and... The refer and reflect test? Refer and reflect, yes. So with respect to the refer and reflect test, the trial court said that it can refer to a ballot measure if it names it, which is, of course, the appropriate test, but also if it, without naming it, employs terms widely used in connection with a ballot measure, or describes the content or effect of the measure. Now, this goes... Is that how you're saying that the trial court... Are you frowning up when we question you? I'm sorry, what? I said, are you frowning when we question you? No, I'm anxious to get your questions. I'm sorry. I've been up since midnight. Oh, okay. I wouldn't want to displease you by asking you a question. I'm just curious. Oh, no. I'm anxious for your questions. The refer and reflect portion, I mean, the reflect portion of it, is what you're saying was misapplied by the IRS? I think both are. The refer was what I was just referring to. Well, if you refer to the actual statute, you're not arguing that that would be an impermissible application? No, I said that that would be proper. Right. So, you're talking about the reflect portion of the... No, I'm talking about the further expansion of referral when you don't name it. Okay. Okay. That's fair. It employs terms widely used in connection with the measure, or it describes the content or effect of the measure. So, these were two additional tests when it's not actually named. Now, we believe the proper test, as I just said, is if you name it or if you're naming a widely recognized substitute name. Like, instead of the Bipartisan Campaign Reform Act, you say McCain-Feingold. Like a popular name. Popular name. You're saying it has to be the actual name or popular name substitute. Right. Other than that, the test is impermissible. Is that your argument? Yes, because what it looks to, and they use it to compound the problem. They use the government's ballot measure pamphlet. They look to terms that are used in the debate about a measure. And like campaign finance, it would be something like, let's get big money out of politics. So, if that phrase was in the ballot measure explanation of what this is intended to do, this McCain-Feingold is intended to do, somebody writes an ad and says, well, let's get money out of politics, then they would have connected the two. They said, well, that refers to words that were used to support the ballot measure, and therefore, that ad identifies McCain-Feingold. But if the public, if that's the information that's being given to the public, isn't it reasonable to infer that the public would recognize those terms as relating to the measure? Well, words like, let's get money out of politics, can refer to all sorts of different things that the government could be doing to do that. Or it could be referring to. What's your best, which of these communications is your strongest case for this? Let's deal with these communications. So, why don't you pick one that you think is your best case? You want to do the administrative regulations? Was that the best one? You want to do the... Yeah, the administrative regulations is a good choice for this. That is number five. And, of course, in the ballot measure pamphlet, it describes that measure as having to do with administrative rules. This ad refers to administrative rules. Now, our contention is that the IRS has specifically rejected the idea that citing words used to support a particular issue, for instance, like drug-free America in example four. They said that is not referring to a specific measure. I thought we were talking about message five. Yeah, message five, I'm comparing what the trial court did here with respect to administrative rules with the IRS regulations and saying the court misapplied the IRS regulations. This one also says, it doesn't just use the phrase administrative rules, which was a key phrase, but I admit it's fairly general. But, it says it's called administrative rules and you're going to hear a lot more about them in the weeks to come. And, this is just what, just a couple of weeks before an election on which there's a referendum about administrative rules. So, why isn't that a refer? Well, because you've got to be, because administrative rules could involve, as in fact what happened here at the example, it could involve anything or many things. But, you don't look at it in the abstract. You also look at it in terms of the upcoming elections, correct? Well, no, that's only one upcoming event. The government is adopting administrative rules all the time. And, remember, the context here is discussion of public issues is permitted by not-for-profit groups. It's just lobbying that isn't. Your test would require them to actually state the name of the. No, or a known substitute. Yeah, it's a bright line test. Okay, because whenever, because not-for-profits are entitled to know and not have their speech chilled on when they would be considered doing lobbying and when they're not. Because when they do general public discussion of general public issues, public issues, which they are, is an educational function of a not-for-profit to do that. They need a bright line on when they're going to get punished for doing lobbying. You agree that the Supreme Court has routinely affirmed Congress' discretion to promote certain activities and not others. Yes. Correct. And do you think that Congress does not have the authority to do that? And haven't they chosen, in this case, to not fund certain activities, not subsidize certain activities? And we're not saying that this activity should be funded. We are not saying that lobbying properly understood must be subsidized. We are not saying that. That's what they said in Reagan. What we are saying is we simply need to know the line, the difference. Congress said, when they adopted these lobbying restrictions, that it, quote, does not extend to the discussion of broad public problems and issues. That's what Congress said. So is your argument then that they were educational? Yes. Issue advocacy is educational. Wisconsin Right to Life said specifically that issue advocacy is educational. Yes. And that Congress has recognized it. In fact, the regulations themselves recognize it. They say, quote, examination and discussion of broad social, economic, and similar problems is not effective. And what test are you using? Oh, we are not challenging the refer and reflect test. What we are challenging is the application of that test by the trial court because it is contrary to the regulations. Counsel, what's our standard of review? Well, on legal issues, de novo. It's a First Amendment case. Facts would be de novo. You're required to engage in independent review of the record. So that would be the standard. Now, as I mentioned, if you look at the two examples, A and B, that we cited, it clearly makes a distinction between a name or a name substitute and simply words used in the debate, which is the test that was used by the trial court. So if you apply the proper test, then the foundation wins. Now, with respect to reflects, the trial courts didn't really announce a test, but basically said if there's anything in the language that suggests that someone could view as positive or negative about the issue itself, that reflects a view on the measure. Well, if it is true, as I've explained, that the law allows the discussion of public issues by not-for-profits, then it would require something more than simply stating something favorable about having a drug-free America. It would have to take something more. Something, as the amici argue and we argue in our brief, a clear endorsement of the adoption or defeat of the measure. Counsel, besides the D.C. Circuit decision, which you agree does not actually address the reflect and refer, is there a case that endorses the bright-line rule that you're advocating here today? Wisconsin right-to-life is the best case on that. They rejected the... Is that a spending case? No, that's a campaign finance case. Campaign finance, that's right. Right. And it involved a prohibition, and it involved the U.S. Supreme Court in Wisconsin right-to-life, too, by imposing a limited gloss because of the problems of vagueness and overbreath that exist here with the trial court's test. But do you think the philosophy around campaign, around political giving, political contributions is a little different than the activities engaged in by Parks Foundation? Yes, and Wisconsin right-to-life did not involve contributions. It involved independent expenditures by advocacy groups. In other words, talking about public issues. And it said that in order for you to be whacked by the law, subject to reporting, subject to a potential prohibition, that you had to have a bright-line test. And they rejected the features of the test employed here. That is, they rejected the idea that the context or the effect of the... should be examined in order to determine that this communication is regulable. They also rejected a multi-factor balancing test. And, of course, what we see here is that certainly with respect to the methodology test. Okay. So, counsel, I would like you to turn to that. Your time is going quickly. And I would like you, because in order to prevail today, you not only have to win on the refer and reflect test, which deals with lobbying, but you have to deal on the educational question, which is methodology. So you've kind of blended some things here together. I'd like you to turn to the methodology then. Well, we challenge the full and fair exposition regulation. We challenge the methodology. I'm sorry. You challenge it as what? Unconstitutional. Okay. And that was not raised below. Is that correct? It was raised below. It was raised below? The First Amendment question on methodology was raised before the tax court? Yes. Where was it raised? You have a very, very long footnote right at the beginning of your brief under the issues presented that suggests that it was not raised, but this court can't consider it. And the government says it was forfeited. In due respect, I interpreted that footnote as saying it was raised properly, because we challenged the regulations of constitutionality. And, you know, under the forgiving test in Citizens United. Is there a discussion in the tax court of the constitutionality of the methodology test? As my understanding, and I haven't reviewed it, but I insisted it be reviewed. Wait. You haven't reviewed the ruling of the tax court in this case? Well, yes, of course I've read the tax court. Okay. Did the tax court address the constitutionality of the methodology test? Yes. Okay. What page of the tax court? It's the last pages of the opinion, beginning at about 80-something. I'm sorry, I don't have the specific reference. Now, with respect to the methodology test, I forget where I was, we also challenged the methodology test. Of course, the methodology test was adopted to respond to Big Mama Rag and the unconstitutionality of the original regulation. Unfortunately, the IRS's policy guidance in the methodology test employs the very same terminology that the D.C. Circuit rejected as unduly vague, and in numerous examples which are set forth in our brief. Now, what you're left with without the regulation and the methodology test is the fact that I've already cited that both the Congress and the regulations specifically provide that general discussion of public policy issues is a permitted, they've identified those as a permitted charitable activity that not-for-profits can engage in. So that's what you're left with. And as a result, these certainly comply with that. Thank you. Counsel, when you come back, would you please point to the page in the tax court's opinion where it addressed the constitutionality of the methodology test? Thank you.  We'll hear from the government. Good morning. May it please the Court. Judith Hadley from the Department of Justice representing the Commissioner. This case is a tax case, not an election law case. The rules at issue determine whether the government is going to pay for part of the speech, not whether the speech will be permitted in the first instance. Petitioner's constitutional argument ignores the clear distinctions between laws that prohibit speech. Those are the election law cases that they talk about, and ones that merely decline to subsidize or promote that speech on a nondiscriminatory basis. So the plea for the First Amendment mandate or the Bright Line rule or the abolishment of facts and circumstances test apply in the election law cases, where speech is actually criminalized in the first instance, that they do not apply in a subsidy case such as this. Counsel, I understand the argument. I guess I'm just a little bothered and want to pick up on something that Mr. Bob said, where his opening plea was for clarity so that the foundation knows in the future when it's been engaging in taxable events and when it's not. It wants to know where the line is so that it can take advantage of the tax laws in an area that is related to speech. So we ought to be sympathetic at least to the effort to know where the line is while we're engaging in speech. The speech is protected one way or another. That's not at issue here. We agree on that. But I think we ought to be at least sympathetic to the idea that we ought to know where the tax laws impose liability and where they don't. Sure, and we believe that the tax laws provide sufficient notice as to what's taxable and what's not, but we do want to make clear that the standard of scrutiny that petitioners argue for under the vagueness doctrine, the strict standard that they cite, is not the applicable standard because the lobbying rules at issue here allocate a subsidy on a viewpoint-neutral basis. Do you believe Reagan is applicable? We do believe Reagan is applicable. That is the applicable rule as well as Cabrano and the Finley decision that we cite in our brief. But under any standard of scrutiny, we believe that the definition of direct lobbying is not vague. There's a definition in the regs for direct lobbying. It must refer to or reflect a view on specific legislation. The regulations further spell out that a communication can refer to legislation if it uses terms, quote, widely used in connection with a specific legislation. That's on page 21 of the addendum attached to the petitioner's brief, or describes the content or effect of legislation. And what's important to remember in this case is that the IRS's interpretation of direct lobbying set out in the regulations is fully consistent with the statutory term, which is just broadly defined and set out in 4945, is any attempt to influence legislation. There's no restriction on that term for names or name substitutes. And it's also consistent with the purpose. And again, the purpose of 4945 is an anti-abuse provision. In the late 60s, Congress was confronted with the situation that private foundations were misusing their funds. Private foundations, unlike public charities, are not subject to public scrutiny and public control and public contributions. You can have a single donor and a pot of money that's subsidized by the government, and as the legislative history to 4945 expresses, Congress was concerned that the private donors were using these funds for lobbying, for political contributions, for their own private interests. And so 4945 was put into place to provide effective limitations on that type of activity. And the IRS's functional interpretation of what refers to, what direct lobbying would entail to include something that goes beyond just using the formal name provides the effective limitation that Congress sought. Okay. Why don't we turn to Communications 4 and 5? Because I think these are probably the most problematic under the Refer and Reflects test. Though I would point out that the petition in this case admitted that 4 and 5 addressed the ballot measures it issued there. 4 and 5 was ballot measure 65. So in some sense, there's no real dispute that that refers to. But looking at the language of Rule 4 and 5 in the tax court's analysis, the tax court said that this advertisement referred to the ballot measure because it used terms widely used, relying on the voter guides, administrative rules, and says you're going to hear a lot more about this in the weeks to come. And this was during the same time period that the ballot measure was about to be voted on. And as Judge Rawlinson pointed out, context is important. We're not looking at these words in a vacuum. The context here is important. And the standard of review for determining whether the court's finding here is correct is clearly erroneous. So the reference here, Dan, the reference here is you're going to hear a lot more about them in the weeks to come, or it's the use of the words administrative rules? The reference widely used term is administrative rules. And that is sufficiently clear to invoke measure 65? In this context that the voters are about to vote on this and that referring to you, the public, yes, we do believe. And it's certainly not clearly erroneous. It also contained the example about the church as well. I'm sorry? It also contained the example about the church and how the church was not able to process its application. That's correct. That's correct. That's correct. Picking up on a question that Judge Feibe had about whether the vagueness of the methodology test was presented to the tax court, it was not. And the tax court expressly pointed out on page 68, note 49, that there had been no vagueness challenge to the educational rules definition. It was only to the refers to part of the direct lobbying rules. Counsel, opposing counsel said that the strongest case to support his argument that there should be a bright line test is Wisconsin right to life. Do you agree or disagree? Well, we disagree, Wisconsin right to life. Again, this gets back to how they're conflating laws that prohibit speech and criminalize speech and laws that just decline to subsidize. And Wisconsin right to life made it a federal crime for corporations to engage in certain political speech. Here, there's no question that the corporation can engage in this type of speech. The question is who's going to pay for it. That's why this is a subsidy case, and the law is clear that refusing to subsidize lobbying or other speech activity protected by the First Amendment does not infringe or regulate First Amendment rights. The Supreme Court said that in Reagan. The Supreme Court said that in Camerano. The Supreme Court has reiterated that in cases decided after Wisconsin right to life. The Wysura case, I'm sure I'm mispronouncing that, the Agency for International Development, we cited a number of cases in the first part of our argument supporting that proposition. One brief comment on Mr. Parks' liability for the tax, because we do believe that the tax court correctly determined that Parks is liable for the tax on the foundation managers. As a manager of a private foundation, Mr. Parks had the duty to ensure that those funds, which were subsidized by the government, were used for the limited purposes for which the foundation was a tax-exempt organization. And if he failed in that duty, he was liable for the tax unless he had reasonable cause. And the party stipulated in this case that if the foundation were found liable, that Mr. Parks would also be liable unless he was able to demonstrate that he had agreed to the expenditure based on advice of counsel as described in the regulations. And why does that argument not succeed for Mr. Parks individually? Because he was not able to demonstrate that he received what the regulations refers to as reasoned, written legal opinions. He only provided a written legal opinion with regard to advertisements two through five. And in fact, in the tax court, he only asserted the defense with regard to advertisements two through five. That's on page 141 through 142 of the excerpts of record. And the tax court looked at the two brief documents that addressed those memos and said it doesn't qualify because they were conclusory. There was no reasoned analysis. And in fact, they haven't even challenged that point on appeal. They just try to avoid the stipulation altogether by saying, well, we can show reasonable cause in some other manner. And that may well be the case in a different case. But in this case, they stipulated that reasonable cause would be shown only by proving that he had relied on a reasoned, written legal opinion. And there's no reason to let him out of that stipulation at this point. Does the court have any questions? It appears not.  Thank you for your time. Thank you, counsel. Rabeau? Thank you. I thought I had the reference to the trial court's decision regarding the methodology test. And I'm just going to have to rely upon our brief. I know we have. Well, I just looked at it. Counsel just cited page 68, footnote 49. I just looked at it. And the tax court said you didn't raise a First Amendment argument citing big mama rag and says not going to address it. Yeah, but I know that we dealt with that. So the tax court was simply wrong in that footnote? No. I know you dealt with it in your brief. But the question is whether you raised this below before the tax court. We believe we did because we generally challenged the constitutionality of the regulations and that that is sufficient. And we argue that in our brief, that issue, that question in our brief. So we believe that we have met that standard. Now, secondly, regarding a bright line. Bright line is required whenever First Amendment speech is going to be regulated. It's not just prohibition. But you're not being regulated. You're being subsidized. There's a difference. No. Well, from our standpoint, we're being penalized way more than the subsidy if we engage in it. There are penalties if you fail to correct it. Being taxed is not a penalty in this context because this is tax that you owed that you didn't pay initially. But the penalty goes way beyond whatever tax would have been otherwise to be paid if there wasn't a, quote, subsidy. And that is a penalty. That's what Big Mama Rag said triggers First Amendment scrutiny is because First Amendment speech is being penalized. It's not necessary that it be prohibited, only that it's being penalized. And furthermore, the D.C. Circuit said that if there is sufficient vagueness that speech is being chilled, then the First Amendment speech is being chilled. Then, of course. It's being chilled because of the possibility you'll have to pay taxes? No, because of the indefiniteness of the line. Right. But the consequence for crossing the line, counsel, are that you have to pay taxes. So the chilling, it seems to me, has to come from the possibility that you'll have to pay taxes on the action. No. The chilling occurs because of the overbroad and vague line that we don't know, and hundreds of organizations have told you they won't know, when they engage in lobbying, when they're doing what is perfectly permissible and encouraged by the Internal Revenue Service, which is engage in the discussion of public issues. That's the chill. That's the fear. All we want, all these organizations want, is simply a definition that is understandable that we can apply. That's all we want. And that requires something more than these vague multi-factor tests or something where you look at words that happen to be used in debates, and if they're used in a measure debate and they're used in a general debate, bam, general discussion is considered measure discussion or identification of the name of the measure that is pending. So we want tests that are simply, we can apply. And I think the best case is that they misapply examples A and B in saying that these common words can be used rather than something more definite, which is a name substitute that is actually appliable. Thank you. You're asking us, could you come back for a moment? Thank you. Could you come back for a moment? Yes, sure. I was going to ask you, are you telling us we have to choose between a bright line rule or the test that was used by the government? There's no in between as far as you're concerned. Yes. The IRS's actual test is the middle ground. The trial court didn't use the IRS's test. All right. They misapplied examples A and B to encompass a lot more territory than the IRS itself had done. All right. Thank you. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for the morning. We are in recess until 9 a.m. tomorrow morning in San Francisco.
judges: Rawlinson, Bybee, Mendoza